UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JULIO ROBERTO HUNT,

              Petitioner,

        -v-                                      14-CV-0676-JTC

ERIC HOLDER, U.S. Attorney General,
MICHAEL PHILLIPS, Facility Office Director, and
JOSEPH KOSON, Assigned Deportation Officer at
Buffalo Fed. Detention Facility,

              Respondents.

---

## <u>INTRODUCTION</u>

Petitioner Julio Roberto Hunt, an alien in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, pending the execution of a final immigration order of removal issued against him.  Item 1.  As directed by this court's order entered September 2, 2014 (Item 2), respondent[1] has submitted an answer and return (Item 4), along with an accompanying memorandum of law (Item 5), in opposition to the petition.  Petitioner declined to file a written reply.  For the reasons that follow, the petition is denied.

---

[1]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of Panama, was admitted to the United States at Miami, Florida, on December 18, 1964, as a lawful permanent resident.  *See* Item 4-1 (Declaration of DHS Deportation Officer Juanita Payan, dated June 27, 2014), at ¶ 5.  DHS records reflect that petitioner was convicted of the following criminal offenses while present in the United States:

a.  On or about February 17, 1971, petitioner was convicted, upon a plea of guilty, in the New York State Supreme Court, Kings County, of Attempted Assault with Intent to Cause Serious Injury with Weapon and was sentenced to a term of imprisonment of one year.

b.  On or about February 27, 1975, petitioner was convicted, upon a plea of guilty, in the New York State Supreme Court, Kings County, of Attempted Possession of a Loaded Weapon and was sentenced to a term of imprisonment of two to three years.

c.  On or about February 20, 1978, petitioner was convicted, upon a plea of guilty, in the New York Criminal Court, Kings County, of Disorderly Conduct and was sentenced to 15 days imprisonment and fined $50.

d.  On or about January 1, 1980, petitioner was convicted, upon a plea of guilty, in the New York Criminal Court, Kings County, in the Queens County, New York, Criminal Court of Criminal Possession of a Weapon in the 4th Degree and was granted a conditional discharge.

e.  On or about March 25, 1981, petitioner was convicted, upon a plea of guilty, in the New York Criminal Court, Kings County, of Disorderly Conduct and was sentenced to 15 days imprisonment and fined $100.

f.  On or about April 12, 1985, petitioner was convicted, upon verdict after trial, in the New York State Supreme Court, Kings County, of Criminal Possession of a Weapon in the 3rd Degree.  For that offense, he was sentenced to a term of imprisonment of 30 months to five years.

g.     On or about August 24, 1989, petitioner was convicted, upon verdict after trial, in the New York State Supreme Court, Kings County, of Murder: Depraved Indifference, Criminal Possession of a Weapon in the 2nd Degree, and Criminal Possession of a Weapon in the 3rd Degree.  For these offenses, petitioner was sentenced to a term of imprisonment of 25 years to life.  On November 18, 1991, the Appellate Division, Second Department affirmed the conviction.

Item 4-1, ¶ 6.

On August 6, 1990, while incarcerated at the Clinton Correctional Facility in Dannemora, New York, petitioner was encountered by agents of the former Immigration and Naturalization Service.  Item 4-1, ¶ 7.  On December 15, 1992, petitioner was served with an Order to Show Cause ("OSC") that charged him with being removable from the United States as an alien who has been convicted of an aggravated felony (crime of violence), pursuant to section 241(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA").  Item 4-1, ¶ 8.  On January 24, 2007, an Immigration Judge ("IJ") denied petitioner's request for relief and ordered him removed from the United States to Panama. Petitioner did not appeal the IJ's decision to the Board of Immigration Appeals ("BIA"). Item 4-1, ¶ 9.  On June 26, 2014, petitioner was taken into DHS custody upon his release from the custody of the New York State Department of Corrections and Community Supervision.  Item 4-1, ¶ 10.

On or about July 2, 2014, DHS sent a presentation packet to the Consulate General of Panama ("Consulate") in New York City requesting that a travel document be issued for petitioner's removal. Item 4-1, ¶ 11.  On July 11, 2014, DHS served petitioner with a Form I-229(a) "Warnings for Failure to Depart," along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document for his removal.  The warning form advised petitioner, among other things, of the penalties

under INA § 243 for taking any action "designed to prevent or hamper or with the purpose of preventing or hampering" his departure from the United States, 8 U.S.C. § 1253(a)(1)(C), and also advised him that, pursuant to INA § 241(a)(1)(C), failure to comply or provide sufficient evidence of his inability to comply may result in the extension of the removal period and subject him to further detention.  Item 4-1, ¶ 12.  According to DHS records, representatives of DHS attempted to contact or had contact with the Consulate on approximately seven occasions in July and August 2014.  DHS was advised that Panamanian officials required a sworn statement of a close relative stating that petitioner is a national of Panama.  DHS, the Consulate, and petitioner have been in contact with petitioner's sister so as to obtain the sworn statement, and the Consulate is awaiting its receipt. Item 4-1, ¶¶ 13-14.

In September 2014, DHS conducted a review of petitioner's custody status in accordance with immigration regulations (*see* 8 C.F.R. § 241.4).  On September 18, 2014, DHS notified petitioner that his detention would be continued, based upon the totality of the information in petitioner's case file which indicated that he would be a threat to the community and a flight risk if he were to be released from custody.  Item 4-1, ¶ 15.

Petitioner filed this action on August 18, 2014, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his detention in DHS custody is unlawful because he was never advised, prior to trial or taking a plea, that he would be deportable if convicted, in violation of the New York State Criminal Code, and the Fifth and Fourteenth Amendments to the Constitution.  Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

**DISCUSSION**

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

The court first notes that petitioner has lodged a collateral attack against the underlying removal order, arguing that his New York State criminal convictions were illegally obtained because he was not advised that a guilty plea could result in deportation. *See* Item 1, pp. 2-4.  This claim appears to be in reliance on *Padilla v. Kentucky,* 559 U.S. 356 (2010), in which the Supreme Court held that the Sixth Amendment to the Constitution requires an attorney for a criminal defendant to provide advice about the risk of deportation arising from a guilty plea.

Petitioner's argument must fail for several reasons.  First, the REAL ID Act of 2005, Pub. L. No. 109-13, 199 Stat. 231 (codified at 8 U.S.C. § 1252), divests the District Court of jurisdiction to review a collateral attack on an underlying order of removal asserted by an alien in a habeas petition.  Thus, this court has no jurisdiction to hear petitioner's challenge to the legality of the underlying criminal convictions and removal order.  Second, even if the court were to review petitioner's claim, the holding in *Padilla* does not apply to the murder conviction upon which the removal order is based, as petitioner was found

guilty after trial.  Additionally, the 2010 holding in *Padilla* does not apply retroactively to petitioner's 1989 conviction that was affirmed in 1991.  *See Chaidez v. United States,* – U.S. –, 133 S.Ct. 1103, 1105 (2013).  Accordingly, the petition is denied to the extent that it seeks relief based on the asserted illegality of the underlying removal order.

Moreover, petitioner's detention is lawful pursuant to INA § 241(a) and in accordance with *Zadvydas.*  Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order.  In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i)  The date the order of removal becomes administratively final;
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory.  *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien.").  The statute also

authorizes the Attorney General to continue the detention of certain criminal aliens–*i.e.*, aliens ordered removed due to conviction of an enumerated crime–beyond the expiration of the ninety-day removal period.  *See* INA § 241(a)(6).[2]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process.  The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States.  *Zadvydas*, 533 U.S. at 699-700.  Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …."  *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement

---

[2]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

> until it has been determined that there is no significant
> likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2). In reviewing the request for release, the agency is required to consider "all the facts of the case" including the alien's efforts to comply with the removal order, the history of the efforts by the agency to repatriate persons to the country in question, the reasonably foreseeable results of those efforts, and the receiving country's willingness to accept repatriation. 8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a

rehabilitative program, or submission to a medical or psychiatric examination.  *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on June 26, 2014, upon his release from the custody of the New York State Department of Corrections and Community Supervision.  *See* Item 4-1, ¶ 10.  His detention in DHS custody was authorized pursuant to INA § 241 as he was subject to a final order of removal, and the 90-day removal period began.  As discussed, DHS then promptly took steps to obtain travel documents for petitioner's removal to Panama. Item 4-1, ¶¶ 11, 13 -14.

Considering petitioner's habeas challenge under the due process standards set forth in *Zadvydas*, petitioner must first "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Zadvydas*, 533 U.S. at 701.  Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing."  *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*.  The petition sets forth

no factual basis to substantiate a belief that there is no significant likelihood he can be removed to Panama in the reasonably foreseeable future.  As indicated in the discussion above, the request for a travel document for petitioner remains pending with the Consulate, and there is nothing in the record before the court to indicate that Panamanian authorities are inclined to deny the request.  Furthermore, DHS records reflect that prompt steps were taken to secure the travel document and that petitioner's sister has been contacted to provide the required sworn statement of nationality.  Item 4-1, ¶ 14.

In addition, the available statistical evidence reveals that in recent years, DHS has successfully repatriated significant numbers of aliens to Panama indicating that there are no institutional barriers to petitioner's removal.  For example, DHS reports show that in fiscal year ("FY") 2010, a total of 188 aliens were repatriated to Panama; in FY 2011, 149 aliens were repatriated to Panama; and in FY 2012, 116 aliens were repatriated to Panama.  *See* DHS Yearbook of Immigration Statistics: 2012, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2012-3. These circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document by the Panamanian government can be accomplished within the reasonably foreseeable future, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to Panama.

Significantly, petitioner has provided no evidence to contradict this expectation, and the presumptively reasonable six-month period established in *Zadvydas* just recently passed, on December 26, 2014.  *See*, Item 5, at p. 10.  Several cases decided within this district have found a habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, is insufficient to meet the petitioner's initial

burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*. *See, e.g., Khaleque v. Dep't of Homeland Sec.*, 2009 WL 81318, at *4 (W.D.N.Y. Jan. 9, 2009) (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701.

Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed.  This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable.  *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied.  *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: February 25, 2015